UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:07CV-00064-EHJ

NANCY A. ROBERTSON                                                          PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                            DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Nancy A. Robertson ("Plaintiff") seeking

judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g).

Both the plaintiff (DN 11) and the defendant (DN 14) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate

Judge (DN 10) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions

of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered July 2, 2007 (DN

10), the parties were notified that oral arguments would not be held unless a written request therefor

was filed and granted. No such request was filed.

### FINDINGS OF FACT

On October 17, 2002, plaintiff filed applications for the payment of Disability

Insurance Benefits and Supplemental Security Income[1] (Tr. 16, 50-52).[2]  Plaintiff alleged that she became disabled on December 5, 2001 as a result of arthritis, back and leg pain, Crohn's disease, stomach cramps, diarrhea, asthma, migraines, manic depression, anxiety, hallucinations and paranoia (Tr. 17, 50, 55).  Administrative Law Judge Michael J. Nichols ("ALJ") conducted a hearing on July 26, 2004 in Bowling Green, Kentucky (Tr. 713).  The plaintiff was present and represented by attorney Mary Burchett-Bower (Tr. 713).  Also present and testifying was Sharon Lane (Tr. 713).

In a decision dated October 28, 2004, the ALJ utilized the five-step sequential evaluation process to evaluate these adult disability applications (Tr. 16-27).  At the first step, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Tr. 17).  At the second step, the ALJ determined from the medical evidence that plaintiff's chronic low back pain with minimal degenerative disc disease of the lumbar spine, obesity, major depression and possible panic disorder are "severe" impairments within the meaning of the regulations (Tr. 21).  At the third step, the ALJ found these impairments are not "severe" enough to meet or medically equal, either singly or in combination, one of the impairments listed in Appendix 1 (Tr. 21).

At the fourth step, the ALJ articulated a number of reasons why he found "credibility is a major issue in this case and that Ms. Robertson fails resoundingly in this regard" (Tr. 22, 24). The ALJ determined that plaintiff retained the residual functional capacity to perform low stress, simple tasks at the light level of exertion requiring no interaction with the general public and little

---

[1]The protective filing date is September 30, 2002 (Tr. 16).

[2]A copy of the application for the payment of Supplemental Security Income is not included in the administrative record (Tr. 3A).

interaction with coworkers and supervisors (Tr. 24). The ALJ noted that from a physical standpoint his findings were more restrictive than the limitations expressed by the non-examining State agency medical consultants but his findings from a mental standpoint were consistent with the opinions of the non-examining State agency psychological consultants (Tr. 24). After considering testimony from the vocational expert, the ALJ found plaintiff does not have the residual functional capacity to return to her past relevant work (Tr. 24).

At the fifth step, the ALJ considered plaintiff's residual functional capacity, age, education, past work experience and the testimony of the vocational expert (Tr. 25). The ALJ found plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy (Tr. 25). Therefore, the ALJ concluded that plaintiff is not disabled and denied her applications (Tr. 25, 27).

Plaintiff timely requested review by the Appeals Council (Tr. 10, 11). In support of her request, plaintiff submitted additional medical evidence and a memorandum in support (Tr. 632-712). After considering plaintiff's arguments and the additional evidence the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-6).

<u>CONCLUSIONS OF LAW</u>

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

"[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

3

or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating an adult disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 4-6). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the

final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff challenges some of the findings the ALJ made at the fourth step in the sequential evaluation process (DN 11).  At that step, the ALJ made findings regarding the weight assigned to medical opinions in the record[3], plaintiff's credibility[4], plaintiff's residual functional capacity[5], the physical and mental demands of plaintiff's past relevant work, and her ability to return

---

[3]20 C.F.R. §§ 404.1527(d), 416.927(d).

[4]In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings.  20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p.

[5]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946.  The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments.  20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946.

to the past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e).

Plaintiff raises two challenges to the ALJ's findings regarding the weight assigned to medical opinions addressing her mental impairments.  First, plaintiff argues the ALJ's findings as to her treating sources are not supported by substantial evidence in the record and do not comport with applicable law.

While the regulations require Administrative Law Judges to evaluate every medical opinion in the record, the process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source.  20 C.F.R. §§ 404.1527(d), 416.927(d).  Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990).  Notably, if the medical opinion of a treating source is found not to be entitled to controlling weight then the Administrative Law Judge must determine how much weight it should be accorded and set forth in the administrative decision good reasons for the weight given to that medical opinion.  Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004) (if an Administrative Law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so).

Here, during the relevant time frame, plaintiff received treatment for her mental impairments at LifeSkills, Inc. ("LifeSkills") (Tr. 525-554, 615-627).  Her treating therapist at

6

LifeSkills was Michael Pasley, M.A., L.P.P., L.P.C.C., and her treating psychiatrist was Stephen Montgomery, M.D. (Tr. 526-554, 615-627).  On September 24, 2003, Mr. Pasley expressed his opinion regarding limitations imposed by plaintiff's mental impairment when he filed out a *medical assessment of ability to do work-related mental activities* form (Tr. 526-527).[6]  Ten months later, Dr. Montgomery adopted the limitations expressed by Mr. Pasley on that form (Tr. 630-631).[7]  Notably, treatment records for the period December 17, 2003 through May 7, 2004 indicate on four occasions a Global Assessment of Functioning ("GAF") rating of 45 was assigned to plaintiff; treatment records for the period August 9, 2003 through December 1, 2003 indicate on five occasions a GAF rating of 40 was assigned to her; and treatment records for the period August 9,

---

[6]On this form Mr. Pasley opined in the category *making occupational adjustments* plaintiff's ability to follow work rules, relate to co-workers, use judgment, and function independently is *fair*; and her ability to deal with the public, interact with supervisor(s), and deal with work stresses is *poor or none* (Tr. 526).  Mr. Pasley explained these limitations are based upon plaintiff's depressive symptoms of decreased "interest/energy/concentration/sleep, crying spells, worthlessness, hopelessness, anxiety, worry [sic] precludes adequate adjustment" (Tr. 526).  Mr. Pasley also commented "[a]lso under even mild stress [sic] will likely decompensate into a panic attack" (Tr. 526).

Mr. Pasley opined in the category *making performance adjustments* plaintiff's ability to understand, remember and carry out complex job instructions and detailed but not complex job instructions is *poor or none*; and her ability to understand, remember and carry out simple job instructions is *fair* (Tr. 527).  Mr. Pasley explained that plaintiff's "[p]oor concentration and memory as well as organizational abilities are adversely affected by symptom [sic] of depression and panic" (Tr. 527).

Mr. Pasley opined in the category *making personal-social adjustments* plaintiff's ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability is *poor or none*; and her ability to maintain personal appearance is *fair* (Tr. 527).  Mr. Pasley explained "[a]gain symptoms of depression and panic precludes adequate adjustment, predictability, reliability and emotional stability" (Tr. 527).

[7]On July 30, 2004, four days after the administrative hearing, the treating psychiatrist Dr. Montgomery signed a copy of the assessment filed out by Mr. Pasley (Tr. 630-631). Immediately above Dr. Montgomery's signature is the hand written comment, "I agree with the above" (Tr. 631).

2002 through November 8, 2002 indicate on three occasions a GAF rating of 50 was assigned to her (Tr. 528, 529, 535, 537, 539, 616, 617, 620, 621, 622, 624, 626).

A GAF rating of 41-50 indicates "[s]**erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." *Diagnostic and Statistical Manual of Mental Disorders* at page 34 (4th ed. tr. 2000).   A GAF rating of 31-40 indicates "[s]**ome impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR  major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home and is failing at school)." Id.

The ALJ found the opinions of Mr. Pasley and Dr. Montgomery are not entitled to controlling weight or any weight (Tr. 23-24).  The ALJ explained that he discounted the opinions because they are inconsistent with clinical findings in the treatment records and the level of treatment received (Tr. 23).[8]  The ALJ also explained that he discounted the GAF ratings of 40-45 in the treatment records because they do not match plaintiff's daily activities, social functioning, level of concentration, the lack of episodes of decompensation, and plaintiff's behavior during the

---

[8]Specifically, the ALJ gave the following reasons:
> "Although significant limitations were endorsed first by the claimant's therapist and then later by her psychiatrist (Exs. 15F, 19F), such are not consistent with the clinical findings contained in the treatment records or the level of treatment Ms. Robertson has received.  She has not required any psychiatric hospitalization or crisis intervention.  Her psychotropic drug regimen is rather routine."

(Tr. 23).

8

administrative hearing (Tr. 23-24).[9]

At first blush, the ALJ seems to have expressed good reasons for discounting the limitations adopted by Dr. Montgomery (Tr. 630-631). However, closer scrutiny reveals that much of the ALJ's reasoning lacks proper support in the record. The consultative psychological examiner and the State agency psychological consultants never addressed Dr. Montgomery's opinions. Thus, there is no medical opinion in the record indicating the limitations adopted by Dr. Montgomery are inconsistent with clinical findings in the treatment records or the level of treatment plaintiff received. Similarly, there is no medical opinion in the record suggesting plaintiff's course of

_____

[9]Specifically, the ALJ gave the following reasons:

> "Likewise, the undersigned does not find the GAF rating of 40-45 to be persuasive. According to the DSM-IV (Diagnostic and Statistical Manual of Mental Disorders), such [sic] rating is indicative of serious symptoms (i.e., suicidal ideation, severe obsessional rituals), and also serious impairment in social, occupational, and work/school functioning (i.e., no friends, inability to keep a job). This profile does not match the claimant's functioning. Her testimony and other reports of record suggest that she is able to engage in some very routine household chores such as cooking, light cleaning, and picking up after the children. The treatment records show that she has very much been interested in the welfare of her children, this has resulted in reluctance on her part to separate from her spouse. She apparently has at least one very close friend, and plays Bunco at least once monthly. She is able to sustain attention and concentration to drive and frequently read. There have been no episodes of decompensation.
>
> ...In addition, although the claimant has alleged an emotional impairment, there was no obvious evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing. She related well to the undersigned and to her representative. She further answered questions quickly and appropriately without any evidence of memory or concentration problems.

(Tr. 23-24).

treatment is incommensurate with her purported mental impairment.  In sum, the ALJ impermissibly substituted his own views for the uncontroverted medical opinion of the treating psychiatrist. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); see also Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000); and Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001).  Therefore, the ALJ's findings regarding the weight assigned to the limitations adopted by Dr. Montgomery are not supported by substantial evidence in the record and do not comport with applicable law.

Additionally, the ALJ discounted the GAF ratings of 40-45 in the treatment records because they do not match plaintiff's functioning (Tr. 23-24).  However, a GAF rating has two components, symptom severity and functioning.  *Diagnostic and Statistical Manual of Mental Disorders* at page 32 (4th ed. tr. 2000).[10]  Further, when a patient's symptom severity and level of functioning are discordant "the final GAF rating always reflects the worse of the two."  Id. at 32-33. Thus, the GAF ratings in the treatment notes may reflect plaintiff's symptom severity rather than her level of functioning.  However, the ALJ did not consider this when he discounted the GAF ratings in the treatment notes (Tr. 23-24).

Next, plaintiff challenges the ALJ's decision to accord greater weight to the functional opinions of the non-examining State agency psychological consultants.  When, as here, the medical opinion of a treating source is not given controlling weight then the Administrative Law Judge must decide how much weight to give to all other medical opinions in the record.  20 C.F.R. §§ 404.1527(d) and (f), 416.927(d) and (f).  The weight an Administrative Law Judge must give to each medical opinion varies according to the relationship that exists between the medical source and

---

[10]A GAF rating is useful in planning treatment and "in tracking the clinical progress of individuals in global terms, using a single measure." *Diagnostic and Statistical Manual of Mental Disorders* at page 32 (4th ed. tr. 2000).

the claimant.  20 C.F.R. §§ 404.1527(d) and (f), 416.927(d) and (f).  The opinion of an examining physician or a psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of a non-examining State agency physician or psychologist is generally entitled to the least weight of all.  20 C.F.R. §§ 404.1527(d)(1), (d)(2), and (f), 416.927(d)(1), (d)(2), and (f); Social Security Ruling 96-6p.

In keeping with these general concepts, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996).  "For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources."  Id.  For this reason the opinions of non-examining State agency medical or psychological consultants can be given weight only to the extent they are supported by the evidence in the record.[11]  20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling 96-6p; see also Atterbery v. Secretary of Health and Human Services, 871 F.2d 567, 570 (6th Cir. 1989) (Opinions of a non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings).  Notably, under certain circumstances the opinions of non-examining State agency medical or psychological consultants may be given greater

_____

[11]In making this assessment consideration should be given to such factors as the supportability of the opinion in light of all of the evidence in the record (not just the evidence in the record at the time the opinion was rendered), the consistency of the opinion with the record as a whole (including other medical opinions), and any explanation for the opinion provided by the non-examining State agency psychological consultant.  Social Security Ruling 96-6p, 1996 WL 374180, *2 (July 2, 1996).

weight than the opinions of treating or examining sources.  Social Security Ruling 96-6p, 1996 WL 374180, *3 (July 2, 1996).  "For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or phychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  Social Security Ruling 96-6p, 1996 WL 374180, *3.

In addition to the medical evidence mentioned above, there is a report prepared by consultative psychological examiner Ollie C. Dennis, Ed.D., and opinions from two non-examining State agency psychological consultants in the administrative record.  The consultative psychological examiner and the State agency psychological consultants did not address the treatment records from LifeSkills, the functional opinions adopted by Dr. Montgomery or the GAF ratings in those treatment records because this medical evidence became a part of the record after they rendered their opinions.  In short, the consultative examiner and the State agency psychological consultants relied on different evidence to reach their opinions about limitations imposed by plaintiff's mental impairments.

Specifically, Dr. Dennis rendered diagnostic, cognitive, and academic skills opinions regarding plaintiff after conducting a clinical interview and administering tests on January 7, 2003 (Tr. 253-259).  However, his opinions are based upon test results he found to be of questionable validity (Tr. 253-259).  Notwithstanding, the State agency psychological consultants relied solely on this doubtful medical evidence in formulating their functional opinions (Tr. 260-272, 275-277,

507-509, 512-524).[12]  Despite the obvious short falling of the opinions rendered by the State agency psychological consultants, the ALJ found their opinions are entitled to greater weight than the opinions of Dr. Montgomery, a treating source.  Given these circumstances the undersigned concludes the ALJ's finding does not comport with applicable law.  Social Security Ruling 96-6p.

The undersigned concludes it is not necessary to address the additional challenges raised by plaintiff because the errors identified above provide more than a sufficient basis to reverse the final decision of the Commissioner and remand the case for additional administrative proceedings.

---

[12]On February 12, 2003 a non-examining State agency psychologist filled out a psychiatric review technique form (Tr. 260-272) and a mental residual functional capacity assessment form (Tr. 275-277).  The non-examining State agency psychological consultant opined that in the four broad areas of function plaintiff had a mild limitation on activities of daily living; a moderate limitation in maintaining social functioning and maintaining concentration, persistence, or pace; and plaintiff had no episodes of decompensation, each of extended duration (Tr. 270).  On the mental residual functional capacity assessment form the non-examining State agency medical consultant opined that in the category understanding and memory, plaintiff was not significantly limited in all three activities; in the category sustained concentration and persistence plaintiff was not significantly limited in six of the seven activities but was moderately limited in her ability to maintain attention and concentration for extended periods; in the category social interaction she was not significantly limited in four of the five activities but was moderately limited in her ability to interact appropriately with the general public; and in the category of adaptation plaintiff was not significantly limited in three of the four activities but was moderately limited in her ability to respond appropriately to changes in the work setting (Tr. 275-276).
On July 9, 2003 a different non-examining State agency psychologist reviewed the record and filled out a mental residual functional capacity assessment form and a psychiatric review technique form (Tr. 507-509, 512-524).  This non-examining State agency psychologist expressed  the same limitations as the earlier non-examining State agency psychologist.  Additionally, this non-examining State agency psychologist indicated on both forms that she was affirming the previous assessment of February 12, 2003 (Tr. 509, 524).

13

RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the final decision of the Commissioner is not supported by substantial evidence and does not comport with applicable law. The undersigned recommends that the final decision of the Commissioner be reversed and, pursuant to 42 U.S.C. § 405(g), the case be remanded to the Commissioner for further proceedings.

NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:        Counsel